16-3740
*United States v. Bick*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of October, two thousand seventeen.

Present:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges*,
> JED S. RAKOFF,
> > *District Judge*.*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                              16-3740

IAN PARKER BICK,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Defendant-Appellant: | JONATHAN J. EINHORN, Law Office of Jonathan J. Einhorn, New Haven, CT |
| For Appellee: | MICHAEL S. MCGARRY, Assistant U.S. Attorney for the District of Connecticut; Deirdre M. Daly, United States Attorney, District of Connecticut (on the brief). |

---

* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

1

Appeal from the judgment of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Ian Parker Bick ("Bick") appeals his judgment of conviction entered on November 1, 2016 after a jury trial that resulted in his conviction of six counts of wire fraud, *see* 18 U.S.C. § 1343, and one count of money laundering, *see* 18 U.S.C. § 1957. Bick appeals, arguing that the admission of certain documents violated the Confrontation Clause, and challenging the sufficiency of the evidence to support his convictions. In addressing Bick's various arguments, we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

\* \* \*

Based on the evidence introduced at his two-week trial, Bick misrepresented to his victims that he was running a successful electronics business and solicited loans and investments from them, promising returns of up to 50% in short periods. He represented that he would buy smart phones, tablets, and other electronics in bulk at a discount and then sell them for a sizable profit. As relevant here, five witnesses testified that they lent money to Bick on his representation that he would use the money for his electronics business.

In fact, Bick's company had stopped buying electronics at least as of July 2013, despite his representations to the contrary. He used the money he solicited to pay off previous investors and lenders and to purchase luxury goods for his own use. As relevant to the money laundering

2

count, he used the $50,000 he received from Rosemary Paccione-Burke and her son Robert Burke on July 26 to buy two jet skis and a trailer.

On January 8, 2015, a federal grand jury indicted Bick for eleven counts of wire fraud, three counts of money laundering, and one count of making a false statement. Trial commenced in November 2015, and on November 25 the jury convicted Bick of six counts of wire fraud (for Bick's July 25 transfer to the Burkes, the Burkes' July 26 and October 15 transfers to Bick, Paume's July 29 transfer to Bick, and the Lichtmans' September 16 and November 1 transfers to Bick) and one count of money laundering (for Bick's purchase of the jet skis and trailer). Bick filed post-trial motions for judgment of acquittal and a new trial, renewing a Confrontation Clause objection made during his trial and challenging the sufficiency of the evidence as to all seven counts of conviction. The court denied Bick's motions. Bick was sentenced on October 26, 2016, and filed a timely notice of appeal on November 2, 2016. On appeal, he raises the same arguments he made in his post-trial motions. We reject all of them.

1. Confrontation Clause

Bick's Confrontation Clause claim relates to the introduction at trial of several documentary exhibits during the testimony of a government agent. These were purported loan and investment agreements drawn up by Bick (and sometimes signed by him) that he sent to prospective "lenders" and "investors" other than those victims who testified at trial. Bick objected to these documents' admission on Confrontation Clause grounds because the documents' recipients did not testify at trial. The district court rejected this argument.

The Confrontation Clause protects a criminal defendant's "right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "Alleged violations of the Confrontation Clause are reviewed *de novo*, subject to harmless error analysis." *United States v. Vitale*, 459

F.3d 190, 195 (2d Cir. 2006). Pursuant to the Supreme Court's Confrontation Clause cases, "testimonial statements by a nontestifying witness" may generally not be introduced into evidence "unless the witness is 'unavailable to testify, and the defendant had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 135 S. Ct. 2173, 2179 (2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)). But a statement "cannot fall within the Confrontation Clause unless its primary purpose was testimonial" — that is, unless the statement, viewed objectively in light of all the relevant circumstances, was made or procured with a primary purpose of "'creating an out-of-court substitute for trial testimony.'" *Clark*, 135 S. Ct. at 2183 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)).

Bick argues that the documents in question were testimonial because they were introduced into evidence with the primary purpose of inculpating him. This argument, however, misconstrues the meaning of testimonial. A statement is testimonial for Confrontation Clause purposes if it was originally made or procured with the primary purpose of creating an out-of-court substitute for use at a future criminal trial. *Clark*, 135 S. Ct. at 2183. A statement is not testimonial if it was made without that purpose but is later *introduced* at a trial with the primary purpose of securing a conviction. Bick does not argue that these various agreements were created for use at his criminal trial, and indeed conceded at oral argument that they were not. Accordingly, the district court did not err in rejecting his Confrontation Clause claim.

2. Sufficiency of the Evidence

"[W]e review sufficiency of the evidence claims *de novo* . . . ." *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014) (per curiam). But "we must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its

4

assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008). We "will uphold the conviction 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Sheehan*, 838 F.3d 109, 119 (2d Cir. 2016) (quoting *Chavez*, 549 F.3d at 124). Thus, in challenging the sufficiency of the evidence, "defendants face a heavy burden, as the standard of review is exceedingly deferential." *Id*. at 119 (quoting *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015) (internal quotation marks omitted).

Bick first challenges his money laundering conviction, arguing that there was insufficient evidence to prove that his purchase of the jet skis and trailer involved money constituting the proceeds of a criminal offense.[1] We disagree. The evidence at trial provided an ample basis for the jury to conclude that Bick was only able to make these purchases because of the Burkes' $50,000 transfer to his account — a transfer which was the basis of a wire fraud conviction. Indeed, this evidence demonstrated that before the transfer, Bick had insufficient funds to make these purchases. Accordingly, Bick's sufficiency claim as to money laundering was properly rejected.

Bick next argues that there was insufficient evidence to convict him of wire fraud. Bick challenges the sufficiency of the evidence to establish a scheme to defraud and his intent to defraud at the time he solicited the relevant funds.[2] In particular, Bick points out that pursuant to

---

[1] Money laundering has five elements: (1) the defendant engaged in a monetary transaction affecting interstate commerce, (2) the transaction involves criminally derived property worth more than $10,000, (3) the property was derived from a specified unlawful activity, (4) the defendant knew the transaction involved proceeds of a criminal offense, and (5) the transaction took place in the United States or the defendant is a U.S. person. 18 U.S.C. § 1957.

[2] Wire fraud has three elements: the prosecution must prove the defendant (1) had a scheme to defraud, (2) defrauded a victim of money or property, and (3) used the wires to effectuate this scheme. 18 U.S.C. § 1343; *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2487 (2016) and 136 S. Ct. 2488 (2016). The government may prove the existence of a scheme to defraud by establishing

the terms of the loan agreements with the alleged victims, he could use their money for business purposes, and paying back past investors was a legitimate business expense. Further, he asserts, there was insufficient evidence that he entered into these agreements intending never to perform.

This argument, too, is without merit. The jury heard testimony that Bick had stopped purchasing electronics as of July 2013, the very time that he began soliciting money from his victims. The jury thus had a basis on which to conclude that Bick could not have used the money for business purposes because his business was no longer operating when he solicited and received the victims' money, and therefore that he never intended to perform in accordance with the agreements. Moreover, there was ample evidence that Bick made material misrepresentations about the success of his electronics business in July 2013 and thereafter — at a time when the business was defunct — to induce his victims to turn over funds. Finally, the loan agreements did not permit the funds to be used for personal expenses, and there was substantial evidence that Bick spent proceeds of his scheme on recreation and luxury items. Accordingly, the jury had more than enough evidence on which to base its verdict as to each of the wire fraud counts of which Bick was convicted.

*** 

We have considered Bick's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

that the defendant made material misrepresentations to victims with fraudulent intent (such as when a defendant makes representations about his future performance, intending never to perform). *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curiam).